IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-CR-005-MR-DLH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| JOHN MICHAEL AWTREY, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion and Memorandum in Support of Motion to Suppress Evidence Obtained as a Result of Illegal Search Warrant" (Document No. 14) filed April 10, 2015. The "Government's Response to Motion to Suppress" (Document No. 17) was filed on April 20, 2015. Defendant filed his "Reply to Government's Response to Motion to Suppress" (Document No. 18) on April 24, 2015. The "Government's Memorandum Concerning Witnesses at Suppression Hearing" (Document No. 21) was filed on June 18, 2015, and Defendant filed his "Response to Government's Memorandum Concerning Witnesses at Suppression Hearing and Supplemental Motion Requesting Presence of Special Agent Evan Campanella at Suppression Hearing Pursuant to Franks v. Delaware, 638 U.S. 154 (1978)" (Document No. 22) on June 19, 2015.

The undersigned held a motion hearing on June 25, 2015, with Defendant personally present with counsel, Mary Ellen Coleman. Special Agent Evan Campanella of Homeland Security Investigations ("HSI") also was present. Having carefully considered the briefs, testimony, evidence, and oral arguments, the undersigned respectfully recommends that Defendant's motions be denied.

## I. BACKGROUND

On February 4, 2015, a "Bill of Indictment" (Document No. 1) was filed charging Defendant John Michael Awtrey ("Defendant" or "Awtrey") with knowingly distributing child pornography and knowingly receiving child pornography, both in violation of Title 18, United States Code, Section 2252A(a)(2); and with knowingly possessing and accessing with intent to view child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B). Subsequently, on April 10, 2015, Awtrey moved to suppress evidence seized at his residence on October 22, 2013. (Document No. 14). The briefs and the arguments submitted at the June 25, 2015, hearing established the following pertinent facts:

Special Agent Campanella submitted a "Search and Seizure Warrant" (the "search warrant") and an "Application for a Search Warrant" (the "search warrant affidavit") to this Court on October 17, 2013. (Document No. 14-1, pp.1-29). The proposed search warrant authorized the search of the "Residence and all Buildings, Property, and Premises located at 580 Highway 19A, Whittier, North Carolina, 28789" (collectively, "the Residence") for images of child pornography and files containing images of child pornography "in any form wherever it may be stored." (Document No. 14-1, pp.26-29).

In the search warrant affidavit, which speaks for itself, Special Agent Campanella discussed the investigation conducted by various law enforcement agencies since at least June 2012 into an online photo sharing website hosted outside of the United States, known as "Website A," which was used by individuals interested in exchanging images of child pornography. (Document No. 14-1, p.16). Essentially, Website A was a still image photo sharing website organized in different forums according to topic.[1] (Document No. 14-1, p.16).

---

[1] Benign topics include "architecture," "travel," and "family." (Document No. 14-1, p.16).

A registered user of Website A could post photo albums in these forums. (Document No. 14-1, p.16). To become a registered user, an individual created a username and provided a valid email address in order to receive a temporary password from Website A. (Document No. 14-1, pp.16-17). Once the user created a new password to log in to Website A, the user could create albums and post images to the albums. (Document No. 14-1, p.17). The user, as well as any anonymous non-user, could comment on posted photos. (Document No. 14-1, p.17). Website A, however, became popular for individuals to trade child pornography images, typically in forums such as "nudity" and "kids." (Document No. 14-1, p.18).

Special Agent Campanella followed a lead that indicated that a registered Website A user with username "iamnice" viewed child pornography on the site in the Franklin, North Carolina area. (Document No. 14-1, p.20). User "iamnice" registered his account with Website A on February 8, 2013 and set the email account "dittyolmon@gmail.com" as the default email address for the account. Under a user information section, "iamnice" wrote, "i love girls." (Document No. 14-1, p.20). The "iamnice" account did not contain albums or images of child pornography; however, "iamnice" did comment on other users' posted photos.[2] (Document No. 14-1, p.21).

Specifically, on February 24, 2013, "iamnice" commented on two images. (Document No. 14-1, p.21). The first image depicted "a close up picture of a completely naked prepubescent girl at the beach. It appears that the girl is in the process of taking off her bathing suit and her genitals are exposed." (Document No. 14-1, p.21). User "iamnice" commented "that nice" on the first image. The second image depicted "a close up picture of the nude genital area of a prepubescent girl. It appears that the girl, while sitting in a beach chair, is in the process of

---

[2] All but two images have been removed from the website. (Document No. 14-1, p.21).

drying off. The photo is focused on the genital area of the young girl." (Document No. 14-1, p.21). User "iamnice" commented "i got the lotion you don't want to burn" on the second image. (Document No. 14-1, p.21).

Because Website A captured a user's internet protocol ("IP") address after the user registered for the website, as well as every time the user accessed the website, authorities captured the IP address of user "iamnice."[3] (Document No. 14-1, pp.21-22). Authorities determined that the IP address belonged to a John G. Awtrey of 580 Highway 19A, Whittier, North Carolina on the date user "iamnice" commented on the photos. (Document No. 14-1. p.24). Further investigation revealed additional information. (Document No. 14-1, pp.22-23). Authorities determined that the Residence was formerly a motel. (Document No. 14-1, p.22). Authorities also determined that John G. Awtrey had passed away in about September 2012. (Document No. 14-1, p.23). John M. Awtrey, son of John G. Awtrey, lived at the Residence and had been head of household since about September 2012. (Document No. 14-1, pp.21-22).[4] Furthermore, a Dodge truck registered to John M. Awtrey was observed by authorities in the Residence driveway. (Document No. 14-1, p.22). John M. Awtrey also received mail at the Residence. (Document No. 14-1, p.23).

In the search warrant affidavit, Special Agent Campanella noted about the Residence the following:

> [The Residence is a] 1.436 acre lot with three residential structures present on the lot. The first structure is off to the left hand side of a gravel driveway and is a single story buildin[g]. It has a stone façade on the lower part of the front of the building and a sign that is visible from highway 19A that states "Family Inn[.]" This structure has a peaked roof with what appears to be a golden eagle holding a wreath on the front of the structure. The second structure, which is straight

---

[3] The captured IP address for user "iamnice" was 50.124.168.120. (Document No. 14-1, p.21).
[4] John M. Awtrey's two minor children, 19-year-old son, and elderly mother also lived at the Residence at the time. (Document No. 14-1, p.23).

4

> back from Highway 19A appears to be a two story building white in color with blue trim around the windows. There is what appears to be a mobile home backed up to the rear of the buildin[g]. The third structure is off to the right of the gravel driveway and appears to be a single family, single story residence, white in color with a wooden deck close to the driveway.

(Document No. 14-1, p.26; see also Document Nos. 22-2 to 22-5).

Special Agent Campanella included two sections in the search warrant affidavit, "Background Regarding Seizure of Computers" and "Background Regarding the Internet," that explained what agents must collect during a search and seizure to find evidence in a child pornography case and how agents may use IP addresses to identify suspects. (Document No. 14-1, pp.11-16). Specifically, he noted, "Every computer or device on the Internet is referenced by a unique IP address the same way every telephone has a unique telephone number." (Document No. 14-1, p.13). Finally, Special Agent Campanella explained that individuals who view child pornography online usually save child pornography files on computer, thumb drives, and other electronic storage devices. (Document No. 14-1, p.23).

Based on all collected information, Special Agent Campanella determined that "there is probable cause to believe that presently and/or at the time of this warrant's execution, property which is evidence relating to the knowing access with intent to view child pornography, will be found inside the [Residence]." (Document No. 14-1, p.6).

On October 17, 2013, Magistrate Judge Dennis L. Howell of the Asheville Division agreed and authorized the search warrant. (Document No. 14, p.4). The search warrant was executed at the Residence on October 22, 2013, about seven months after the comments were posted on the two images hosted on Website A. (Document No. 14, p.4). Agents seized computer equipment and computer data storage devices from the Residence during the search. (Document No. 17, p.3). Special Agent Campanella and another agent also interviewed Awtrey

5

during the search. (Document No. 14, p.4). Awtrey said he was user "iamnice" on Website A during the interview. (Document No. 17, p.3).

## II. DISCUSSION

There are two issues before this Court. The first issue is whether Defendant was entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), as required by the Fourth Amendment. The second issue, related to but independent of the Franks hearing issue, is whether probable cause existed to support the government's search and seizure conducted at the Residence on October 22, 2013. The undersigned denied Defendant's motion for a Franks hearing on June 25, 2015, because Defendant did not meet either of the requirements to conduct one. The undersigned also will deny Defendant's motion to suppress evidence because there was probable cause based on the totality of circumstances. Even assuming for the sake of argument there was no probable cause, the search was still valid because the agent acted in good faith in executing the search warrant pursuant to U.S. v. Leon, 468 U.S. 897 (1984).

**A. Hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).**

The undersigned denied Defendant's motion for a Franks hearing because Defendant did not meet the requirements to conduct one. Two requirements must be met for a Franks hearing. Franks, 438 U.S. at 156. First, a defendant must make a preliminary showing that the affiant made a false statement intentionally or with reckless disregard for the truth in the search warrant affidavit.[5] Id. The showing must be more than conclusory and accompanied by a detailed offer of proof. Id. at 171. Second, a defendant must show that the false statement made intentionally or with reckless disregard for the truth was necessary to the finding of probable cause. Id. at 165.

---

[5] Allegations of negligence or mistake are insufficient for a Franks hearing. Franks, 438 U.S. at 171.

6

A defendant faces an even higher burden of proof for an omission in a search warrant affidavit ("an affidavit offered to procure a search warrant 'cannot be expected to include … every piece of information gathered in the course of an investigation.'") U.S. v. Tate, 524 F.3d 449, 455 (4th Cir. 2008) (citing U.S. v. Colkley, 899 F.2d at 300 (4th Cir. 1990)). A defendant must show that an omission was "necessary to the finding of probable cause" and that the "omission was designed to mislead or was made with reckless disregard of whether it would mislead" the issuing judge. Tate, 524 F.3d at 454-55. If the requirements are met, yet there remains sufficient content in the search warrant affidavit to support probable cause, a Franks hearing is not required.[6] Id. at 171-72.

The Government preemptively argued that Defendant had not met the threshold for a Franks hearing. (See generally, Document No. 21). The Government argued that Defendant did not meet the Franks threshold because Defendant has not offered any proof to support his claim that Special Agent Campanella showed a reckless disregard for the truth in his search warrant affidavit. (Document No. 21, p.2). Furthermore, Defendant did not deny that at least one of the two images at issue constituted child pornography, meaning that there was a finding of probable cause elsewhere in the search warrant affidavit. (Document No. 21, p.2). Thus, the Government did not plan to make the Agent available at the hearing. (Document No. 21, p.2).

Defendant, on the other hand, argued that he met the Franks threshold because Special Agent Campanella's omission in the search warrant affidavit regarding how routers function constituted a reckless disregard for the truth. (Document No. 22). Specifically, Defendant argued that Special Agent Campanella did not explain that a single IP address may support multiple computer devices which can be accessed simultaneously by multiple individuals through a wireless

---

[6] There is always a presumption of validity with respect to the search warrant affidavit. Id. at 171.

router, that multiple computers using the same router would have the same IP address, and finally, that any computer within range of a wireless router could have been sharing a router or an account to access the internet. (Document No. 22, p.3). Defendant included the "Affidavit of Phillip Likins Pursuant to 28 U.S.C. § 1746" to "provide background and technical information regarding computers and how [IP] addresses, cable modems, and routers function" to support this contention.[7] (Document No. 22-1). Defendant alleged that the omission of a router explanation was critical to the finding of probable cause given that the subscriber of the IP address, John G. Awtrey, was deceased, that the Residence was formerly a hotel or several apartments, and that the search was conducted seven months after the photos were viewed and commented about online. (Document No. 22, pp.3-4). Moreover, Defendant alleged that the search warrant affidavit failed to provide info about who maintained the IP address after the death of the subscriber and failed to link the account email of Website A to the Residence to be searched. (Document No. 22, p.4, fn.1). Defendant concluded that the agent's omission regarding how IP addresses function was recklessly misleading and would have defeated probable cause if included. (Document No. 22, p.5). Thus, Special Agent Campanella's presence at the hearing was required. Id.

Though the undersigned, in an email to the parties, requested Special Agent Campanella's presence at the June 25, 2015, hearing, he ultimately denied the Defendant's motion for a Franks hearing. (Document No. 23, 49:40 to 50:35). The undersigned found that Defendant did not meet either of the requirements for a Franks hearing, and even if the undersigned had found that Defendant met the requirements for a Franks hearing, probable cause existed elsewhere in the search warrant affidavit. Thus, as a matter of law, Defendant was not entitled to a Franks hearing.

---

[7] Likin currently works for the Federal Defenders of North Carolina, Inc. as a Computer Systems Administrator and has more than fifteen years of experience in the information technology industry. (Document No. 22-1, ¶1).

Defendant did not provide sufficient proof, if any, that Special Agent Campanella, with reckless disregard of whether the omission would mislead the Court, omitted background information about how routers function in the search warrant affidavit. In Colkley, for example, the Fourth Circuit found that the defendant made no showing and the district court possessed no evidence that the agent had the requisite intent to mislead. Colkley, 899 F.2d at 301.

> The most that the record here reveals about [the agent's] failure to include the photo spread information is that he did not believe it to be relevant to the probable cause determination. At the very worst, he was merely negligent in disclosing all relevant considerations to the magistrate. His acts fell far short of the level of fragrant police action Franks is designed to prevent.

Id.[8]

The rationale in Colkley is analogous to the rationale in this case. Defendant did not, and could not, provide evidence as to Special Agent Campanella's intention to mislead. Defendant did provide the Likin Affidavit, but the Likin Affidavit merely provides background information about how technological systems function (Document No. 22-1). The Likin Affidavit provides no evidence that Special Agent Campanella recklessly misled this Court. There is no evidence in the record, for example, to suggest that Special Agent Campanella even knew there was a router located at the Residence.

In fact, there is extensive evidence to suggest that Special Agent Campanella provided as much information as possible in the search warrant affidavit to the issuing judge. The agent, for example, accurately described the nature of the Residence, including the fact that it was formerly

---

[8] The Fifth Circuit has recognized that an inference of recklessness may be found if the omitted information was critical to the finding of probable cause. See U.S. v. Martin, 615 F.2d 318, 328 (5th Cir. 1980). The Fourth Circuit, however, "has doubts about the validity of inferring bad motive under Franks from the fact of omission alone, for such an inference collapses into a single inquiry the two elements—'intentionality' and 'materiality,'—which Franks states are independently necessary." Colkley, 899 F.2d at 301.

a motel. The agent also conducted months of investigative due diligence after receiving the Website A tip. He cross-checked with other law enforcement agencies to determine the listed IP subscriber as well as the names of individuals who currently lived at the Residence, for example by determining who at the Residence received mail and whose car was parked in the driveway.

It is important to consider the policy behind a defendant's higher burden of proof for omission in a search warrant affidavit. Though an omission in a search warrant affidavit is not immune from inquiry, a "failure to include a matter that might be construed as exculpatory … potentially opens officers to endless conjecture about investigative leads, fragments of information or other matter that might, if included have redounded to defendant's benefit." Colkley, 899 F.2d at 297. Agents cannot be expected to include all facts in a search warrant affidavit. If this were the case, then almost all defendants would seek a Franks hearing.

Defendant also did not prove that omitted background information about how routers function in the search warrant affidavit was necessary to a finding of probable cause. In Colkley, the Fourth Circuit determined that omitted information in a search warrant affidavit about composite height descriptions during a suspect line up was not necessary for a probable cause determination. Colkley, 899 F.2d 301-02. The Court found that omission must be **necessary** for a probable cause determination rather than **potentially affect** the outcome of the probable cause determination. Id. Instead, the Court held that the issuing judge must consider the totality of circumstances pursuant to Illinois v. Gates, 462 U.S. 213 (1983), to determine probable cause. Id. The affidavit before the court in Colkley, although omitting information about a suspect line up, included eyewitness identification of the suspect, information about the suspect's past criminal activity, and independent corroboration by law enforcement of tips. Id. This information **was** sufficient for a probable cause determination. Id.

Again, the rationale in Colkley is analogous to the rationale in this case. It is possible that information about a router could contribute to the probable cause determination. However, information about a router certainly is not dispositive for a probable cause determination. Instead, law enforcement, similar to law enforcement in Colkley, received a tip and independently corroborated the tip. That independent corroboration linked comments from user "iamnice" to an IP address which pinged to the Residence where the search was later conducted.

Even if Defendant had met both Franks hearing requirements, probable cause, discussed in greater detail in the section below, existed elsewhere in the search warrant affidavit. Thus, if for that reason only, Defendant was not entitled to a Franks hearing on June 25, 2015.

**B. Motion to Suppress**

The Fourth Amendment protects individuals against "unreasonable" searches and seizures and states that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The issuing judge must find probable cause that a crime was committed before he issues a search warrant. See Illinois v. Gates, 462 U.S. 213, 235 (1983). The issuing judge determines probable cause by reviewing the totality of circumstances. Id. at 238-39. ("The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a **particular place**.") (emphasis added) Id. The Fourth Circuit has determined that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inference of where one would likely keep such evidence." U.S. v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

A search warrant affidavit must provide the issuing judge with a substantial basis for

11

determining probable cause.[9]  Id. at 239.  However, if probable cause is insufficient, the evidence obtained from a search is still admissible if the agent relied in "good faith" on the issuing judge's probable cause determination.  U.S. v. Leon, 468 U.S. 914, 920-24 (1984).  Officers do not act in "good faith" if they were dishonest or reckless in preparing the search warrant affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.  Id. at 926.  There are four limited situations in which the Leon "good faith" exception cannot be applied: first, when the affiant based his application on knowing or reckless falsity; second, when the judicial officer wholly abandoned his role as a neutral and detached decision maker and acted as a "rubber stamp;" third, when the affidavit was so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable; or fourth, when the warrant was so facially deficient that the executing agents could not reasonably have presumed that the warrant was valid.  Id. at 923.[10]

Overall, if evidence during a search and seizure is obtained illegally, then the evidence is tainted and must be suppressed.  Wong Sun v. U.S., 371 U.S. 471, 488 (1963).

First, Defendant argued that there was insufficient probable cause, based on a totality of circumstances, to search the Residence for evidence of child pornography.  (Document No. 14, p.6).  Defendant alleged that the search warrant did not establish probable cause because it was based on two images (one arguably which did not constitute child pornography) viewed and commented about in cyberspace on a single date more than seven months prior to the issuance and execution of the search warrant.  (Document No. 14, pp.6-7).  Defendant further alleged lack of

---

[9] The issuing judge's initial probable cause determination is entitled to "great deference."  Gates, 462 U.S. at 236.
[10] Where a defendant challenges both probable cause and applicability of the good faith exception, the court may proceed directly to the good faith issue.  Leon, 468 U.S. at 925.  This Court, however, will address both issues.

probable cause because the Residence was formerly a motel; the owner of the IP address was deceased; and not all content on Website A was illegal. (Document No. 14, pp. 6-7).

Defendant further argued that the seven months between when the two images were viewed and commented about online and when the search warrant was executed alone could invalidate the search warrant. (Document No. 14, pp.8-9). ("Evidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt.") (Document No. 14, p.8) (citing U.S. v. McCall, 740 F.2d 1331, 1336 (4th Cir, 1984)). Defendant provided U.S. v. Zimmerman, 277 F.3d 426, 434-34 (3rd Cir. 2002), to support the contention that without evidence of other crimes committed or a pattern of criminal activity, a seven-month difference in a child pornography case was not timely and therefore did not justify probable cause. (Document No. 14, p.8).

Finally, Defendant argued in his reply that the Leon "good faith" exception did not apply in this case for several reasons. (Document No. 18, pp. 7-8). First, Defendant alleged that Special Agent Campanella recklessly omitted information in the search warrant affidavit, specifically that "one of the photos viewed [did] not constitute child pornography." (Document No. 18, p.7). Second, Defendant alleged that because the issuing judge failed to view the two photos and accepted "conclusory statements" in the search warrant affidavit, the issuing judge acted as a "rubber stamp" for law enforcement rather than as an objective judicial officer. (Document No. 18, p.7). Finally, Defendant alleged that no objectively reasonable officer would rely on a search warrant application so devoid of necessary information as to the probable cause determination. (Document No, 18, pp.7-8). Thus, according to Defendant, this case exemplified at least three of the four situations in which the Leon "good faith" exception could not apply. (Document No. 18, pp.7-8).

The Government, on the other hand, argued that probable cause did exist based on the totality of circumstances. The Government alleged that it is known, based on law enforcement training and experience, that individuals who view child pornography online save the files on electronic storage devices such as computers and thumb drives. (Document No. 17, p.6). Furthermore, the Government noted that the search warrant affidavit contained extensive information about how computer files, images, and other data may be recovered months or years after they are downloaded from the Internet or even just viewed online. (Document No. 17, p.6). The search warrant affidavit also informed the issuing judge about the overall nature of Website A and the nature of the images viewed and commented about on the site, at least one of which Defendant conceded was child pornography. (Document No. 17, p.7). The Government also explained that the search warrant affidavit linked the comments on Website A to the target "iamnice," who had a membership with Website A and who had expressed sexual interest in children through his comments, to a particular location in North Carolina. (Document No. 17, pp. 7-8). The Government concluded that based on the totality of circumstances, there was a substantial basis for the issuing judge's probable cause determination and subsequent issuance of the search warrant. (Document No. 17, p.8).

Moreover, the Government argued that evidence to support probable cause was not stale as a matter of law. The Government distinguished Defendant's use of Zimmerman from the facts in this case; the issue in Zimmerman concerned a video of an adult female engaged in bestiality rather than images of sexual exploitation of children. (Document No. 17, p.8). Rather, the Government explained that the Fourth Circuit, in accord with other Circuits, determined that information collected within one year in child pornography cases is not stale. (Document No. 17, p.8) (citing U.S. v. Davis, 313 Fed.Appx. 672, 674 (4th Cir. 2009).

Finally, the Government argued that even if the Court disagreed with the contention that the search warrant was supported by probable cause, the evidence from the search should not be suppressed because the agent who executed the search warrant did so in good faith, and there was no evidence to suggest otherwise. (Document No. 17, pp. 9-10).

Evidence that law enforcement collected was not stale, as a matter of law, at the time agents executed the search warrant. Information a year old is not stale in child pornography cases. Davis, 313 Fed.Appx. at 674 (citing U.S. v. Lacy, 119 F.3d 742, 745 (9th Cir. 1997)) ("[C]ollectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes."). Thus, any evidence law enforcement collected from the date user "iamnice" viewed the images on Website A and the date the search warrant was executed—a seven-month period—is not stale.

The undersigned acknowledges that the tangible evidence gathered before the issuance of the search warrant in this case—comments about two images on a web site—was limited and respectfully encourages the Government to consider the amount of evidence gathered before seeking a Magistrate Judge's issuance of a search warrant. However, the undersigned does find that, though limited, there was sufficient evidence to support probable cause based on the totality of circumstances in this matter.

The evidence in support includes but is not limited to at least one image user "iamnice" viewed and commented about on Website A on February 24, 2013, the link between user "iamnice" and the IP address established at the Residence prior to when the image was viewed, and law enforcement background and expertise as to how individuals who view child pornography operate online and how these individuals store child pornography files on electronic storage devices such

as computers.

However, assuming for the sake of argument that there was a lack of probable cause, the <u>Leon</u> good faith exception does apply because **none** of the four limited situations in which it cannot apply are present. First, as previously explained in the context of <u>Franks</u>, Special Agent Campanella's search warrant affidavit was not knowingly or recklessly false. Second, there is no evidence to suggest that the issuing judge abandoned his detached and neutral judicial role. Third, as explained above, the search warrant affidavit had sufficient indicia of probable cause. Fourth and finally, the executing agents could reasonably have presumed the search warrant valid because the warrant was not facially deficient. The search warrant, for example, described the content of the images, established a link from the images and comments to the place to be searched, and included a description of items to be seized. (Document No. 14-1, pp.1-29). <u>Compare</u> <u>U.S. v. Doyle</u>, 650 F.3d 460, (4th Cir. 2011) (holding good faith exception was not applicable because the warrant authorizing search for child pornography was based on statements of three children alleging molestation by defendant who showed them pictures of "nude children" with no further description of the pictures or date alleged and thus so lacking in probable cause that reliance on warrant was unreasonable) <u>with</u> <u>U.S. v. Williams</u>, 548 F.3d 311, 318-21 (4th Cir. 2008) (applying good faith exception to affidavits connecting residents of property to drug activity elsewhere and stating that affiant knew through "training and experience" that drug dealers kept evidence of drug dealing in their residences).

Thus, there was sufficient probable cause for agents to search the Residence. For the sake of argument, even if there was a lack of probable cause, the agents relied in good faith on the issuing judge's probable cause determination when executing the search warrant. Therefore, any evidence collected during the search was not tainted and should not be suppressed.

## III. CONCLUSION

The undersigned finds, based on the totality of the circumstances, that the agents had probable cause to search the Residence on October 22, 2013. In the alternative, assuming there was no probable cause, the undersigned finds that the agents acted in good faith consistent with U.S. v. Leon, 468 U.S. 914 (1984). The fruit of the search should not be suppressed.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant's "Motion and Memorandum in Support of Motion to Suppress Evidence Obtained as a Result of Illegal Search Warrant" (Document No. 14), and Defendant's "…Supplemental Motion Requesting Presence of Special Agent Evan Campanella at Suppression Hearing Pursuant to Franks v. Delaware, 638 U.S. 154 (1978)" (Document No. 22) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within **fourteen (14)** days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED.**

Signed: July 20, 2015

David C. Keesler
United States Magistrate Judge