UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) DOCKET NO. 1:15-CR-5 |
| | ) |
| vs. | ) |
| | ) |
| JOHN MICHAEL AWTREY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE MARTIN REIDINGER
UNITED STATES DISTRICT COURT JUDGE
JUNE 2, 2016




APPEARANCES:

On Behalf of the Government:

     DAVID ANDREW THORNELOE, ESQ.,
     Assistant United States Attorney
     227 West Trade Street, Suite 1700
     Charlotte, North Carolina 28202



On Behalf of the Defendant:

     MARY ELLEN COLEMAN, ESQ.,
     Federal Defenders of Western North Carolina
     1 Page Avenue, Suite 210
     Asheville, NC 28801



LAURA ANDERSEN, RMR
Official Court Reporter
United States District Court
Charlotte, North Carolina

P R O C E E D I N G S

THURSDAY, JUNE 2, 2016:

      (Court called to order at 3:48 p.m.)

      THE COURT:  The next matter we have on the calendar is United States versus John Michael Awtrey, which is before the Court for the sentencing of the defendant on charges of distribution of child pornography in violation of 18 U.S.C. Section 2252A(a)(2), receipt of child pornography in violation of 18 U.S.C. Section 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. Section 2252(a)(a)(5)(B).

      Ms. Coleman, good afternoon.

      MS. COLEMAN:  Afternoon, Your Honor.

      THE COURT:  Is the defendant prepared to proceed?

      MS. COLEMAN:  He is, Your Honor.

      THE COURT:  Mr. Thorneloe, is the government prepared to proceed?

      MR. THORNELOE:  Yes, Your Honor.

      THE COURT:  In preparation for this hearing I've noted that there does not appear to be any objections to the Presentence Report.  I've not seen any departure motions or sentencing memorandum.  Are there any such items filed in preparation?

      MS. COLEMAN:  No, Your Honor.

      THE COURT:  Any further from the government?

1          MR. THORNELOE:  There is not, Your Honor.

2          We do expect that a -- I will inform the Court today

3     about a resolution concerning restitution, and I have a

4     memorandum, similar to the one you've seen recently, where

5     both parties agree.  We'll inform the Court today of what

6     that's going to say, and then I will file that, probably

7     tomorrow.

8          THE COURT:  Okay.  Very good.

9          Let's see, this matter -- since it was resolved

10    by -- yeah, I think I said earlier, defendant's plea of

11    guilty, that's not correct.  This was done by stipulated bench

12    trial rather than guilty plea.  So there's no need for

13    completing the Rule 11.  I will move straight to the issue of

14    the Presentence Report.

15         Mr. Awtrey, I need for you to stand for a moment

16    because I have some questions for you.

17         There is a document that has been prepared by the

18    probation officer, I see that your attorney is showing you a

19    copy there at your table.

20         On the upper left-hand side it has a caption that

21    reads "United States of America versus John Michael Awtrey."

22    On the upper right-hand side it has the title that reads

23    "Presentence Investigation Report."

24         Have you seen this document before today?

25         THE DEFENDANT:  Yes, sir.

1       THE COURT:  Have you had an opportunity to review it

2  with your attorney?

3       THE DEFENDANT:  Yes, sir.

4       THE COURT:  Do you understand the contents of that

5  document?

6       THE DEFENDANT:  Yes, sir.

7       THE COURT:  Ms. Coleman, have you had an opportunity

8  to review the Presentence Report with Mr. Awtrey?

9       MS. COLEMAN:  Yes, Your Honor.

10      THE COURT:  Are you satisfied that he understands

11  the contents of that document?

12      MS. COLEMAN:  Yes, Your Honor.

13      THE COURT:  Okay.  Thank you, Mr. Awtrey.  You may

14  take your seat.

15      With regard to the Presentence Report, as I

16  mentioned earlier it does not appear that there are any

17  objections for us to resolve.  Are there any issues concerning

18  the Presentence Report that we need to take up?  Any for the

19  defendant?

20      MS. COLEMAN:  No, Your Honor.

21      THE COURT:  Any for the government?

22      MR. THORNELOE:  No, Your Honor.

23      THE COURT:  With that the Court will accept the

24  Presentence Report as written, based thereon the Court will

25  find that the total offense level in this case is 37, and the

1    criminal history category is I.

2              Based on that total offense level and criminal

3    history category the Court concludes that the guideline range

4    in this case would call for a term of incarceration between

5    210 and 262 months.

6              And in light of the fact that there are multiple

7    counts of conviction, the 20-year statutory maximum that

8    applies to any one count would not limit the guideline range

9    because they could be made consecutive, at least in part.

10   Therefore, the guideline range in this case calls for a term

11   of incarceration of 210 and 262 months.

12             Ms. Coleman, did I calculate that correctly?

13             MS. COLEMAN:  Yes, Your Honor.

14             THE COURT:  Do you agree, Mr. Thorneloe?

15             MR. THORNELOE:  I do, Your Honor.

16             THE COURT:  Ms. Coleman, what is the appropriate

17   sentence for me to impose with regard to Mr. Awtrey in this

18   case?

19             MS. COLEMAN:  Thank you, Your Honor.  Mr. Awtrey is

20   a 56-year-old man without so much as even a prior traffic

21   ticket on his record.  He is someone who has been employed and

22   it's proven in his Presentence Report, consistently throughout

23   his life.  He has no drug or alcohol addiction.  He has no

24   mental health diagnosis.

25             He's spent many years prior to this case caring for

1  an ill wife, the mother of his two younger children that

2  eventually passed away, and subsequently spent several months,

3  at least, caring for an ailing father who also passed away.

4        For all intents and purposes, he's led a very

5  law-abiding and what most individuals would consider to be a

6  normal life.  This case has certainly torn that life apart.

7  He's very remorseful about that because he knows that it was

8  his own decisions, and it was his own doing that has done

9  that, and it has caused a considerable amount of strain and

10  change in his family.

11        I can say, Your Honor, that since his arrest

12  Mr. Awtrey has made some very responsible decisions regarding

13  his family.  He has agreed and allowed his two younger

14  children to be adopted by his adult daughter, who I believe is

15  present in the courtroom today.  He has renewed his faith, and

16  has spent many hours -- because I don't know if it's really

17  obvious, he's been in custody for over two and a half years

18  and he has spent that time positively studying, doing as many

19  correspondence courses as he has been able to take, and also

20  ministering to other individuals that are in custody with him.

21        We are not blind to the fact that obviously the

22  issue that stands out in this case is the number of images.  I

23  think that there are two things that we would like to address

24  in regard to that.

25        First of all, you know, we have previously discussed

1    many times in this court, that as far as the Guidelines are

2    concerned, there are issues in the Guidelines that they do not

3    necessarily take into consideration contemporary experience or

4    changes in technology.

5              And what we do know now is that images are available

6    to be downloaded and preserved in numbers and amounts quite

7    easily, and often in ways that were not anticipated when these

8    Guidelines were originated.

9              We think that the ease of that technology that --

10   and it's probably contributed to the number of images in this

11   case.

12             Additionally, what may not be readily apparent in

13   the Presentence Report, is that Mr. Awtrey has exhibited

14   some -- reporting some compulsive type behavior in the past.

15   It was evident in the search warrant, just in his residence.

16   It was a former motel.  It was somewhat of a sprawling piece

17   of property that was virtually covered with old automobiles

18   and junk.  And I think that there was almost, like, a

19   compulsive collecting nature to this image count.  Because

20   looking at it, no human could really even view the amount of

21   images that were coming in and being stored on his machinery.

22             We would ask the Court to consider Mr. Awtrey's

23   guideline range in comparison to other cases that have been

24   before the Court.

25             I don't mean to sound like a broken record, but this

1   is a guideline range that has problems.  We know that there

2   are a spectrum of types of conduct that this guideline

3   encompasses.  If the number of images is taken into

4   consideration, we believe it is appropriate to consider them

5   within that spectrum, but not insofar as granting an upward

6   departure, which is what the back part of the Presentence

7   Report doesn't recommend but suggests may be available.

8           If the image count is taken into consideration, we

9   believe it's more appropriately within that spectrum of

10   offenders who have lower image counts or don't engage in

11   trading.  That's where it is more appropriately considered.

12          And we would ask the Court to consider, you know,

13   the main argument and the problem with this guideline range is

14   that for the most part it tends to congregate individuals with

15   similar increases towards the top of the statutory max.

16          And the statutory max without consecutive sentences

17   is 20 years in this case, and his potential guideline sentence

18   is congregated in that.

19          And we do think that it overstates the 3553 factors.

20   And that sentence within this guideline range is not necessary

21   in this particular case, and that a variance is probably

22   appropriate, based upon the behavior in this case in

23   comparison to other cases.

24          We were before the Court several weeks ago where a

25   case was argued to be the worst case that the government had

1  seen in this Court, and yet that individual's ultimate

2  sentence was even lower than the guideline range that

3  Mr. Awtrey is currently facing.

4          So for that reason and because the Guidelines are so

5  problematic, we do think the Court should consider a

6  non-guideline sentence.

7          But I would like to express that Mr. Awtrey is

8  someone who, as I said, he's not someone in necessarily need

9  of drug and alcohol rehabilitation, or mental health

10 rehabilitation.  He's certainly open to sex offender treatment

11 which would be appropriate in this situation.

12         But I do think he's one, considering his background

13 and circumstances, will be very appropriately sentenced with a

14 shorter sentence.

15         He's not someone, I think, that the Court will

16 necessarily have to -- honestly, I don't think he's someone

17 that the Court would see again.  I think he's someone who can

18 abide by rules, and with appropriate supervision, will not

19 reoffend.  And for that reason I do not think that a sentence

20 in this very high guideline range is necessary in this case.

21 Thank you.

22         THE COURT:  Thank you.

23         Mr. Thorneloe, what's the position of the

24 government?

25         MR. THORNELOE:  Your Honor, as I said many times

1    before, the government has not yet abandoned the Guidelines.

2    For that reason I'm not going to say that we agree with a

3    departure sentence or variant sentence.  But in this case I

4    would ask that the Court go not lower than a 15-year sentence.

5            As we look at some of the factors that exist in this

6    case we find that some of the things that the sentencing

7    commission looked at a few years ago and suggested as things

8    to look for exist in this case.  And it is that this defendant

9    had involvement in online communities, originally detected

10   because he's posting on a file-sharing photo-sharing website

11   based out of Russia and commenting on sexually explicit images

12   of children.

13           And then from there we see that he has a long period

14   of time that he's involved in this material.  One of the

15   charges goes back to 2007.  He's not actually detected until

16   2014.

17           And what we also find that it is not just that he

18   did something in 2007 and a little bit later in 2014.  This is

19   a man that worked at it.  It isn't just because of technology

20   that he has so many images and so many computers.

21           You look at the Presentence Investigation Report, we

22   see that, you know, it's not just that he had several hundred

23   thousand images, he filled up multiple computers and multiple

24   hard drives, and all kind of devices with images.  I mean, he

25   was -- I don't know if it's because of -- I don't know why he

1   did this.

2          But this forensic analyst that is sitting next to me

3   spent nearly a year going through this material and it was

4   exhausting, and he can't stop because what if that last image

5   is a production image.  So you have to go through all this

6   material.  But it was a huge resource drain to work this case.

7          We saw it as the quality of this material is younger

8   oriented, there's pictures of babies and toddlers, there's the

9   torture and sex acts upon those other individuals.

10         The quality is bad.  Quantity certainly has a

11  quality all its own, which it does in this case, certainly,

12  but the nature of this material is bad, worse than usual.

13         And I agree with Ms. Coleman when it comes to saying

14  that -- I can't come up to this Court and say every case is

15  the worst case -- this is the worst we've seen.  And I won't

16  say that.  I won't say that this defendant shocks me worse

17  than Defendant Lamb did, a couple weeks ago.  But every case

18  is unique.

19         We see 221 known victims.  It's a long list of

20  tragedy in the Presentence Report.

21         In this case there could have been a lot more

22  restitution requests, there were three in this case, and we've

23  come to an agreement on those.

24         But we see some of the victims that we're used to

25  seeing.  We see some we've never seen before that we're not

1   used to seeing.

2           Your Honor, for these reasons we think you should

3   find that a sentence of no less than 15 years is appropriate.

4   This is an individual who was sexually gratified by the abuse

5   of children.

6           The Court knows that -- it heard argument before

7   about memorialization of this type of torture, and how tragic

8   it is when an individual gets pleasure in such things.

9           So, Your Honor, we ask for the sentence -- I do want

10  to mention specifically with respect to restitution, three

11  series reported to us for restitution requests.  One of them

12  is the Eight Kids Series that's known.  As this Court knows,

13  there are five victims in the Eight Kids Series.  And this

14  time around the defendant possessed three of those victims.

15          I mentioned, under pseudonyms, which victims those

16  are in my memorandum, as well as two other victims that we

17  named.

18          Payment for those and arrangements for that payment

19  will of course be in that memorandum.  The total of that

20  restitution request is $25,000.  In this case it's $5,000 per

21  victim.

22          Second, Your Honor, we have a little bit of an

23  unusual request in this case.  This case has been particularly

24  a family tragedy.  The defendant's biological children, the

25  two youngest, have been adopted by the oldest biological

1    child.  And obviously there's some family tension and problems

2    as a result of this case.  I won't go into that today with the

3    Court, but the defense has agreed with me that the defendant

4    will consent to a no contact order as a condition of

5    supervised release with respect to the two children who are

6    still minors today.  That's been a request from the family for

7    me.  The defendant doesn't have a problem with it.  They

8    requested this even though it's quite likely those individuals

9    will be adults by the time this defendant ever gets out of

10   prison.  So we are asking the Court to impose that.

11           I would like to make an additional filing with this

12   Court in which I would identify those individuals, but I would

13   do that under seal.  And the defense indicates to me that they

14   have no objection to that request.

15           Thank you, Your Honor.

16           THE COURT:  Okay.  Thank you.

17           Mr. Awtrey, at this time you have the opportunity to

18   address the Court and to tell me anything that you feel I

19   should know before I make my decision regarding the case.

20           THE DEFENDANT:  Your Honor, I'm sorry to the Court.

21   I have destroyed my life.  I've destroyed my family's life,

22   and there's no excuse for it.

23           Since I've been incarcerated I've been trying to

24   focus on changing my life and proceeding toward the future,

25   trying to help other people with their problems while we've

1    been -- while in jail I've been trying to help other people.

2            Also, Your Honor, in the future, I would like to

3    either -- maybe be a teacher or a counselor and help people

4    work through issues trying to recover from problems.

5            I've even thought about maybe getting my CNA and

6    becoming, like, a hospice careworker.

7            And so, Your Honor, whether I'm, you know, inside

8    prison or outside prison, you know, I want to be a responsible

9    part of society again, and I want to be able to help other

10   people.  That's all I can say, Your Honor.

11           THE COURT:  Okay.  Thank you, Mr. Awtrey.

12           THE DEFENDANT:  Thank you.

13           THE COURT:  Mr. Awtrey, I need for you to stand for

14   the imposition of the sentence in this case.

15           Pursuant to the Sentencing Reform Act of 1984, and

16   the case of United States versus Booker, it is the judgment of

17   this Court, having considered factors noted in 18 U.S.C.

18   Section 3553(a), that the defendant John Michael Awtrey is

19   hereby committed to the custody of the United States Bureau of

20   Prisons to be in prison for a term of 150 months.

21           With regard to my reasons for the sentence that I

22   have imposed here, that there are several factors that have

23   gone into this.  I have said in many of these cases regarding

24   child pornography I have found the Guidelines to be of,

25   essentially, no use because they apply enhancements really

1  across the board rather than differentiating between cases.

2  They just lump all the cases together.

3          I won't go into a lot of detail as I went into that

4  the last case that I had that the prosecutor referred to the

5  case regarding Mr. Lamb.  But those are my reasons why I think

6  the Guidelines are of little help.

7          So I try to look at each of these cases on an

8  individual basis and try to assess the seriousness of the

9  case.  I try to assess whether or not the defendant appears to

10  be any sort of danger to the public.  I try to assess what is

11  necessary to afford adequate deterrence, not just to this

12  defendant but to others who participate in this activity.

13          It's kind of hard to differentiate, in some

14  respects, the seriousness of these offenses because that then

15  implies that some are less serious than others and foreboding

16  the abuse of children is serious no matter what.

17          But still I do have to differentiate between these

18  cases.  And here where -- generally speaking, where there is

19  no contact offense, I rarely go over 15 years in terms of the

20  sentence.  Where it is not a production offense, I rarely go

21  with a sentence longer than 15 years.

22          So I look at cases such as what we have here with

23  Mr. Awtrey, where it is possession and distribution, within a

24  bracket, generally, of five years to 15 years with some

25  exceptions at both ends.

1    Here I see a case that tends toward the upper end of

2  that spectrum, simply because of the sheer size of the

3  collection, the sheer number of images, the sheer number of

4  victims.

5    I noted that there were a number of videos that were

6  identified by the length of the video, as opposed to the

7  number of videos.  But if you assume that each video was, on

8  average, about two minutes in length, which these apparently

9  often are, this collection would come to over 3 million images

10 the way that it is counted for Guidelines purposes.

11    This is probably one of the two or three largest

12 collections of child pornography that have been involved in a

13 case where I have done the sentencing.

14    That's certainly a factor that tends toward the

15 upper end of this 5 to 15 year range.

16    Now I'll note, based on the information in the

17 Presentence Report, that a relatively small percentage of this

18 appears to have been material that was of an extreme nature,

19 even though some of it was, and that is taken into account as

20 well.

21    I've also taken into account the fact that there is

22 no evidence in this record that the defendant has been a

23 danger with regard to prior contact offenses or future contact

24 offenses.

25    But, as the prosecutor said, there are those factors

1   such as the defendant having been directly involved in an

2   online community that promotes this -- the collection and

3   distribution, sharing of this type of material and was

4   involved in it for a long time, and spent a lot of time doing

5   it.

6           Taking all of those factors into account, I believe

7   that the sentence that I've imposed, 150 months, which is 12

8   and a half years, is sufficient to reflect the seriousness of

9   the offense, it is sufficient to provide just punishment for

10  the offense, and it is sufficient to afford adequate

11  deterrence to conduct of this nature by this defendant, as

12  well as by others who participate in it.  So for those reasons

13  I have imposed the sentence that I have.

14          The Court recommends that the defendant participate

15  in a sex offender treatment program during the period of

16  incarceration.

17          Upon release from imprisonment, the defendant shall

18  be placed on supervised release for a term, balance of his

19  life.

20          This term consists of a life term of supervised

21  release on each of Counts One through Three, with those terms

22  to run concurrent.

23          Within 72 hours of release from custody of the

24  Bureau of Prisons the defendant shall report in person to the

25  probation office in the district to which the defendant is

1    released.

2          While on supervised release the defendant shall not

3    commit another federal, state, or local crime, and shall

4    comply with the standard conditions that have been adopted by

5    the Court in the Western District of North Carolina.

6          In addition, the defendant shall comply with

7    following additional conditions:

8          The defendant shall have no contact, either direct

9    or indirect, at any time, for any reason with any of the

10   victims, or the victims' families, or any affected parties in

11   this matter unless provided with specific written

12   authorization to do so in advance by the United States

13   Probation Officer.

14         The defendant shall submit to a psycho-sexual

15   evaluation by a qualified mental health professional who is

16   experienced in the evaluation and managing of sexual offenders

17   as approved by the United States Probation Officer.  The

18   defendant shall complete all the treatment recommendations and

19   abide by all the rules, requirements, and conditions of the

20   program until discharged.  And the defendant shall take all

21   medications as prescribed.

22         The defendant shall submit to risk assessments,

23   psychological and physiological testing, which may include,

24   but is not limited to polygraph examination, and/or Computer

25   Voice Stress Analyzer, or other specific tests and monitor the

defendant's compliance with supervised release treatment
conditions, all at the direction of the United States
Probation Officer.

The defendant's residence and employment shall be
approved by the United States Probation Officer. Any proposed
change in residence or employment must be provided to the U.S.
Probation Officer at least ten days prior to the change and
pre-approved before the change may take place.

The defendant shall not possess any materials
depicting and/or describing "child pornography" and/or
"simulated child pornography" as those terms are defined in 18
U.S.C. Section 2256, nor shall the defendant enter any
location where such materials may be accessed, obtained or
viewed, including pictures, photographs, books, writings,
drawings, videos, or video games.

The defendant shall comply with requirements of the
Sex Offender Registration and Notification Act 42 U.S.C.
Section 16901 and following, as directed by the Probation
Officer, by the Bureau of Prisons, and by any state sex
offender registration agency in any state where the defendant
resides, works, is a student, or -- and the district of
conviction.

The defendant shall not associate or have any
verbal, written, telephonic, or electronic communications with
any person under the age of 18 except in the presence of a

1   parent or legal guardian of such minor; on the condition that

2   the defendant notify the parent or legal guardian of his

3   conviction prior history, and has written approval from the

4   United States Probation Officer.  This provision does not

5   encompass persons under the age of 18 such as waiters,

6   cashiers, ticket vendors, and the like, with whom the

7   defendant must deal with in order to obtain ordinary and usual

8   commercial services.

9          The defendant shall not loiter within 100 feet of

10  any park, school property, playground, arcade, amusement park,

11  day-care center, swimming pool, community recreation field,

12  zoo, youth center, video arcades, carnivals, circus --

13  circuses, or other places primarily used or which would

14  reasonably be expected to be used by children under the age of

15  18, without prior written permission of U.S. Probation

16  Officer.

17         The defendant shall not purchase, possess,

18  control -- or control any cameras, camcorders, or movie

19  cameras without prior approval of the United States Probation

20  Officer.

21         Defendant shall not use, purchase, possess, procure,

22  or otherwise obtain any computer or electronic device that can

23  be linked to any computer networks, bulletin boards, Internet,

24  internet service providers, or exchange formats involving

25  computers, unless approved by the United States Probation

1  Officer.  Such computers, computer hardware or software would

2  be subject to warrantless searches and seizure by the United

3  States Probation Officer.

4          The defendant shall not allow -- excuse me.  The

5  defendant shall allow the United States Probation Officer, or

6  other designee, to install software designed to monitor

7  computer activities on any computer that the defendant is

8  authorized to use.  This may include, but is not limited to,

9  software that may record any and all activities on all

10 computers that the defendant may use, including capture of

11 keystrokes, application information, internet use history,

12 email correspondence, or chat room conversations.  The

13 defendant shall pay any costs related to the monitoring of

14 such computer usage.

15         The defendant shall not use or have installed any

16 programs specifically and solely designed to encrypt any data,

17 file folders, or volumes of any media.

18         The defendant shall, upon request, immediately

19 provide the probation officer with any and all passwords

20 required to access data compressed or encrypted for storage by

21 any software.

22         The defendant shall provide a complete record of all

23 passwords, internet service providers, email addresses, email

24 accounts, and screen names, and the like, to the probation

25 officer and shall not make any changes without the prior

1  approval of United States Probation Officer.

2          The defendant shall not use, possess, or control any

3  bootable linux or counter-forensic tools.

4          The defendant shall not have any social networking

5  accounts without the approval of the United States Probation

6  Officer.

7          During the period of supervised release, the

8  defendant shall notify all employers, family, friends, and

9  others with whom he has regular contact of his conviction and

10 history as a sex offender and that the defendant is being

11 supervised by the United States Probation Officer.

12         The defendant shall not possess, any sadomasochistic

13 bindings, restraints, or handcuffs.

14         The defendant shall not hitchhike or pick up any

15 hitchhikers.

16         The defendant shall not possess any children's

17 clothing, toys, games, and the like, without the permission of

18 the United States Probation Officer.

19         The defendant shall not be employed in any position

20 or participate as a volunteer in any activity that involves

21 direct or indirect contact with children under the age of 18,

22 without the written permission of the United States Probation

23 Officer.  And under no circumstances may the defendant be

24 engaged in a position that involves being in a position of

25 trust or authority over any person under the age of 18.

1    The defendant shall not possess any legal or illegal

2 or pornographic material, nor shall the defendant enter any

3 location where such materials can be accessed, obtained, or

4 viewed, including pictures, photographs, books, writings,

5 drawings, videos, or video games.

6    It is ordered that the defendant shall pay the

7 United States a special assessment in the amount of $300.

8    The defendant finds that -- excuse me.

9    The Court finds that the defendant does not have the

10 ability to pay a fine or interest, and having considered the

11 factors noted in 18 U.S.C. Section 3572(a), the Court would

12 waive the payment of fine and interest in this case.

13    The defendant shall forfeit his interest in those

14 properties as identified in Document 32, the Consent Order and

15 Judgment of Forfeiture previously entered in this case by the

16 Court on August 27, 2015.

17    Payment of the criminal monetary penalties shall be

18 due and payable immediately.

19    The Court has considered the financial and other

20 information contained in the Presentence Report and finds that

21 the following is feasible:

22    If the defendant is unable to pay any monetary

23 penalty immediately, during the period of imprisonment payment

24 shall be made to the Federal Bureau of Prisons Inmate

25 Financial Responsibility Program.

1    Upon release from imprisonment, any remaining

2  balance shall be made in monthly installments of no less than

3  $50, to commence within 60 days of release until paid in full.

4    Throughout the period of supervision the probation

5  officer shall monitor the defendant's economic circumstances,

6  and shall report to the Court with recommendations as

7  warranted, any material changes that may affect the

8  defendant -- any material changes that affect the defendant's

9  ability to pay any court-appointed penalties.

10    I would also include in the judgment, the

11  restitution as set forth by the agreement of the parties, and

12  I would hold the judgment until that has been submitted.  I

13  won't enter one judgment and then amend it after that has been

14  submitted.

15    I believe I failed to state that the 150-month

16  sentence is on each of Counts One through Three, with those

17  terms to be served concurrently.

18    Ms. Coleman, are there any other issues regarding

19  either the sentence or the judgment that need to be addressed?

20    MS. COLEMAN:  Your Honor, we would like to make an

21  objection on the record to four of the sex offender conditions

22  of supervision that we feel are unconstitutionally vague.

23    The first one is the loitering.  Because loitering

24  is not defined.  Basically we feel that is constitutionally

25  vague and what activities constitute loitering.

1    The second is the employment provision, in that it
2  prohibits any activity that involves direct or indirect
3  contact.
4    Our objection is that indirect contact with children
5  is also not defined, so it does not give fair notice and
6  warning of what qualifies.
7    The third is the notification to employers, family
8  and friends.  Our objection is that the, "others with whom he
9  may have regular conduct" again, it is not defined, it is
10  constitutionally vague, and has no limitations.
11    And then the fourth is the possession of the
12  children's clothing, toys, and games.  Again, it's vague and
13  there's no real inclination in the record for the necessity of
14  the condition.
15    THE COURT:  Well, your objection will be noted in
16  the record.
17    Obviously, these are -- with the wording of those
18  conditions, it is as set forth through the Administrative
19  Office of the Courts and from the Sentencing Commission, as I
20  understand it.  So if you want to challenge those on appeal,
21  you certainly have the right to do that.  I'll be very
22  interested to learn what you find out as a part of that.
23    MS. COLEMAN:  Thank you, Your Honor.
24    THE COURT:  Anything else?
25    MS. COLEMAN:  Your Honor, we would just request that

1    the Court provide recommendation that Mr. Awtrey be housed as

2    close to the Asheville area as possible.

3              And also we may want the judgment to reflect he has

4    been in custody since his state arrest on these charges, since

5    October 22, 2013.  Those charges were later dismissed.

6              THE COURT:  I will include in the judgment the

7    statement that the defendant was held in state custody on

8    related charges from October 22, 2013, to February 6, 2015.

9    And that this is provided in the judgment for the purpose of

10   allowing the defendant proper credit pursuant to Section 3585.

11             MS. COLEMAN:  Thank you, Your Honor.

12             THE COURT:  I will also include in the judgment the

13   recommendation that the defendant be placed as close as

14   possible to Asheville, North Carolina, considering his

15   security classification.

16             MS. COLEMAN:  Thank you, Your Honor.

17             THE COURT:  Anything else?

18             MS. COLEMAN:  No, Your Honor.

19             THE COURT:  Mr. Thorneloe, anything else for the

20   government?

21             MR. THORNELOE:  Your Honor, I don't know if I missed

22   it or the Court omitted it.  Is the Court putting in a no

23   contact order with the two children ongoing?

24             THE COURT:  Well, I didn't mention that because I

25   thought that the -- I thought one of the conditions is

1  sufficient to cover it.  Because so long as the two children

2  are minors, they would fall within the written and verbal

3  communication provision.  Of course once they're no longer

4  minors, that would expire.

5          Is there -- maybe I misunderstood what you were

6  asking for.

7          MR. THORNELOE:  Your Honor, the request from the

8  family is that, even after they are no longer minors, that he

9  not have contact with them.  That if contact would be resumed,

10 it would be only on the child's request and a change in

11 condition that way.

12         They will always be his children, they won't always

13 be children.  But they're asking for that to be ongoing even

14 though they are no longer minors.

15         THE COURT:  Okay.  I misunderstood what you were

16 asking.  That's by stipulation of the parties?

17         MR. THORNELOE:  Yes, Your Honor.

18         THE COURT:  Okay.  And I will include that in the

19 judgment.

20         MR. THORNELOE:  Thank you, Your Honor.

21         THE COURT:  Well, that's not just as a term of

22 supervised release, that's even during the period of

23 incarceration.

24         MR. THORNELOE:  We would prefer during incarceration

25 and supervised release, Your Honor.

1    THE COURT:  So that is also a recommendation for

2  enforcement by BOP as well as a term of supervised release.

3    MR. THORNELOE:  Yes, Your Honor.

4    THE COURT:  Okay.  Anything else?

5    MR. THORNELOE:  Nothing further, Your Honor.

6    THE COURT:  Mr. Awtrey, you have the right to appeal

7  this sentence, as well as the conduct of your stipulated

8  non-jury trial, to the Fourth Circuit Court of Appeals.

9    If you choose to appeal, you must file a written

10 notice of appeal with the Clerk of this Court within a period

11 of 14 calendar days following the date of entry of final

12 judgment in the case.

13    If you choose to appeal but do not have the funds

14 with which to appeal, you have previously been determined to

15 be indigent and may appeal at government expense.

16    Do you understand this right of appeal as I've

17 explained it to you?

18    THE DEFENDANT:  Yes, Your Honor.

19    THE COURT:  In closing, Mr. Awtrey, I will say that

20 there are a number of things that you said as part of your

21 allocution that I think are very apt.  Your actions have

22 obviously very negatively affected, not only your life, but

23 the lives of your family members.  But at the same time that

24 doesn't mean that you are -- that everything is over.  You

25 have figured out that there are ways that you can effect, in a

1  positive way, people who are around you.  Keep that in mind.

2          These next years aren't going to be easy for you by

3  any means.  But if you keep in mind that your objective is to

4  be a responsible person and to help others, you will give

5  yourself purpose in life.  You don't have to waste these

6  years.  They don't have to be wasted at all.

7          Wish you the best in that, Mr. Awtrey.

8          THE DEFENDANT:  Thank you, Your Honor.

9          THE COURT:  Defendant is remanded to the marshal.

10         This matter is concluded.

11         (The matter is concluded at 4:30 p.m.)

12                    * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF NORTH CAROLINA
2  CERTIFICATE OF OFFICIAL REPORTER

3

4       I, Laura Andersen, Federal Official Court Reporter, in

5  and for the United States District Court for the Western

6  District of North Carolina, do hereby certify that pursuant to

7  Section 753, Title 28, United States Code that the foregoing

8  is a true and correct transcript of the stenographically

9  reported proceedings held in the above-entitled matter and

10 that the transcript page format is in conformance with the

11 regulations of the Judicial Conference of the United States.

12
        Dated this the 18th day of August, 2016.
13

14

15
                        S/Laura Andersen
16                      Laura Andersen, RMR
                        Federal Official Court Reporter
17

18

19

20

21

22

23

24

25